## EDGELL v. HAGENS ET UX.

1. **Mortgage:** HOMESTEAD: HUSBAND AND WIFE. The want of concurrence sufficient to invalidate a mortgage upon a homestead, under section 1990 of the Code, must, in the absence of fraud or mutual mistake, be apparent on the face of the instrument. Where a mortgage covering the homestead and other property was presented to the wife by her husband and signed by her under the supposition that the homestead was not included therein, it was held that the mortgage was valid, it not appearing that the mortgagee had knowledge of the circumstances under which it was signed.

*Appeal from Lee District Court.*

TUESDAY, APRIL 6.

ACTION to foreclose a mortgage. Margaret Hagens alone defends. She avers that she is the wife of her co-defendant James Hagens; that a portion of the property covered by the mortgage is their homestead, and that the mortgage, in respect to the homestead, is invalid. There was a decree for the plaintiff foreclosing the mortgage as against the whole property. Margaret Hagens appeals.

*Sprague & Gibbons*, for appellant.

*Craig & Collier*, for appellee.

ADAMS, CH. J.—At the time of the execution of the mort-
gage, November, 1876, the defendant James Hagens was
residing with his family in the city of Keokuk,
and engaged in the business of pork packing. He
was the owner of his pork packing establishment,
and also of a valuable homestead. In the prosecution of his
business he had obtained from the plaintiff Edgell large ad-
vances of money. He was, at that time, owing him a bal-
ance of account amounting to over ten thousand dollars.
This balance he was not only not in a condition to pay, but
he wanted to obtain from Edgell still other large advances of
money to be used in his business during the pork packing
season then close at hand. Edgell demanded, as a condition
of granting an extension and making further advances, that
Hagens should secure by mortgage the amount due. Hagens'
property consisted of his pork house and homestead. Edgell
demanded that a mortgage should be given upon both.
Hagens expressed some reluctance about including his home-
stead, stating that his wife would not join in the mortgage if
the homestead was included. Edgell, however, was firm in
his demands. Hagens, induced by the exigency of his business,
caused his attorney to draw a mortgage which covered the
homestead as well as the pork house. Hagens' wife, the de-
fendant Margaret Hagens, was not present. The mortgage
was drawn in the office of Hagens' attorney. His wife was
confined at home by sickness. She had no knowledge that
her husband contemplated mortgaging the homestead. She
had knowledge that it had become necessary to mortgage
something to Edgell, and at the request of her husband, made
a short time previous, she had consented to join with him in
a mortgage upon the pork house. Soon after the mortgage
was drawn it was presented to her for her signature and

*1. MORTGAGE: homestead: husband and wife.*

acknowledgment. This was done at her house by her husband and a notary public, who had been employed to take her acknowledgment. She was in a weak and nervous condition, but was able to walk from one room to another. Upon the mortgage being laid on a desk before her for her signature she was asked by the notary if she knew what she was about to sign, to which she replied that she thought she did. She did not read the mortgage, nor was it read to her, nor was anything said as to what it contained or what it did not contain. She did not herself affix her signature to it, but directed her daughter to do it, who was standing near her. In doing so, according to her testimony, and as the fact must be conceded to be, she supposed that the mortgage covered nothing but the pork house. Edgell was not present. The acknowledgment was taken in the usual way, and the mortgage was delivered to Edgell, who filed it for record. For the indebtedness secured by the mortgage three notes were given, payable in six, eighteen and thirty months. Hagens also, according to the arrangement, commenced drawing upon Edgell for more money. He drew immediately for $10,000, and drew in the aggregate, at different times, about $50,000, a large portion of which was afterwards paid. Before any portion of the mortgage debt was paid the pork-house was destroyed by fire, and Hagens became insolvent.

The appellant, Margaret Hagens, insists that the mortgage, while good as to the pork house property, cannot properly be enforced against the homestead. She bases her defense in the first place upon the fact that there was a want of consent upon her part to make a mortgage upon her homestead. In support of her position our attention is called to section 1990 of the Code, which is in these words: "A conveyance or incumbrance (of the homestead) by the owner is of no validity unless the husband and wife, if the owner is married, concur in and sign the same joint instrument." The appellant insists that the statute evidently contemplates that there may be a signing without concurrence, and that it is a clear case

of signing without concurrence, where a mortgage is signed which embraces the homestead with other property, but of which fact the signer is wholly ignorant.

But we cannot think that the legislature intended that where persons execute a mortgage, valid upon its face, they should afterwards be heard to dispute its validity merely upon the ground that they were ignorant of its contents. It is true there may be a signing by one of the mortgagors without concurrence. If, for instance, the appellant's name did not appear in the granting part of the mortgage, it would be considered upon a construction of the instrument that she did not concur in the conveyance. *Sharp v. Bailey*, 14 Iowa, 387: *Fuller & Co. v. Hunt*, 48 Iowa, 167. The want of concurrence sufficient to invalidate a mortgage upon a homestead must, in the absence of fraud or mutual mistake, be apparent upon the face of the instrument. *McHenry v. Day*, 13 Iowa, 445. There is no pretense that there was a mutual mistake, and we come to the question as to whether the mortgage can be declared invalid in respect to the homestead on the ground of fraud.

It is said that the appellant was misled by her husband, and that Edgell was sufficiently informed in regard to her determination not to incumber her homestead to give him some reason to suppose, at the time he accepted the mortgage, that she was drawn into the signing of it by deception. In support of the proposition that she was misled by her husband, it is insisted that while the mortgage was laid before her and she had an opportunity to inspect it, and nothing was said at the time to mislead her or throw her off of her guard, yet as she was a married woman, having peculiar confidence in her husband, and in a weak and nervous condition, she was justified in supposing that her husband would not allow her ignorantly to join in a mortgage upon the homestead after her expressed determination that she would not, and after he had gained her consent to join in a mortgage upon the pork house only.

Edgell v. Hagens.

Whether, if Edgell had been cognizant of the precise circumstances under which she signed the mortgage he could be allowed to enforce it as against the homestead, we need not determine. We have looked in vain for any evidence whatever tending to show that he had such knowledge, or had knowledge which should have put him upon inquiry. The fact that he was told that she would not join in a mortgage upon the homestead does not show it. It was his right to insist upon such mortgage as a condition of granting an extension and making further advances. It was equally the right of Hagens and wife to refuse to give such mortgage. They had their choice. Hagens certainly elected to give it, and when the mortgage was brought to Edgell duly signed by both and duly acknowledged, he had a right to assume that she elected to give it also. It would have been an exceedingly strange circumstance if Edgell had refused to receive the mortgage until he had had a personal interview with the appellant, and had ascertained from her own lips whether she understood that her homestead was covered by the mortgage.

She insists, however, that whatever may have been the fact in regard to Edgell's actual knowledge, her husband was his agent in procuring her signature, and that he must be deemed to know all that her husband knew. This position is not well taken. It was in no sense Edgell's business to procure the appellant's signature.

Finally, it is insisted that the mortgage is not sufficient even in form. It is said that the appellant is not sufficiently named in the body of the mortgage. She is described as Margaret, the wife of James Hagens. It appears to us that there is no uncertainty in the description. If she is the wife of James Hagens, her name is Margaret Hagens.

In our opinion the decree of the District Court must be

AFFIRMED.